Iris MENA, Plaintiff—Appellee,

and

Jose E. Mena, Plaintiff,

v.

CITY OF SIMI VALLEY; Randy G. Adams; Marvin Hodges; Roy Jones; Vincent Allegra; Alan Mccord; Richard Thomas; Ronald Chambers; William Lappin; Arnold Baynard; Jeffrey Dominick; Jack Greenburg; Richard Lamb; Frank Ahlvers; John Adamczyk; Tim Brown, Defendants,

and

Darin L. Muehler; Robert Brill, Defendants—Appellants.

No. 01–56673.

D.C. No. CV–98–08512–AHM.

United States Court of Appeals, Ninth Circuit.

Nov. 23, 2005.

James S. Muller, Law Offices of James S. Muller, Los Angeles, CA, for Plaintiff–Appellee.

Paul L. Hoffman, Esq., Schonbrun, Desimone, Seplow, Harris and Hoffman, LLP, Venice, CA, for Plaintiff.

David L. Nye, Esq., Nye Peabody & Stirling, Santa Barbara, CA, for Defendants.

Before PREGERSON and REINHARDT, Circuit Judges, and ARCHER,* Senior Circuit Judge.

### MEMORANDUM **

On February 3, 1998, at 7 a.m., Simi Valley Police Officers Robert Brill and Darin L. Muehler, along with a SWAT team and other officers, executed a warrant to search 1363 Patricia Avenue. Inside they found Iris Mena, a 5′2″ woman, asleep in her bedroom. The officers pulled Mena out of bed and placed her in handcuffs at gunpoint. They then ordered Mena outside—barefoot and in pajamas—and took her into a converted garage. She was held there, in handcuffs, while the officers executed the search warrant.

According to Officer Muehler, the search of the house itself lasted an hour and forty minutes, until approximately 8:40 a.m. The officers then began to clean, inventory the evidence, and videotape the premises. The inventory was completed at 8:45 a.m., as shown on the inventory documents. A second round of videotaping was completed at 8:57 a.m. That video shows Officer Muehler sitting in the living room filling out paperwork, while Mena remained handcuffed in the garage. Officer Brill admitted that Mena was held an additional ten to fifteen minutes after videotaping

* The Honorable Glenn L. Archer, Jr., Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

was completed. In line with all this testimony, Mena testified that she was held a total of two to three hours.

On October 19, 1998, Iris Mena brought an action in district court under 42 U.S.C. § 1983 alleging that Officers Brill and Muehler used excessive force and restrained her for an unreasonable period of time during a search of her home. On June 12, 2001, trial began on Mena's claims that her detention violated the Fourth Amendment. The trial concluded on June 21, 2001. The jury was instructed: "A police officer is required to release an individual detained in connection with a lawful search as soon as the officers' right to conduct the search ends *or the search itself is concluded,* whichever is sooner." The jury returned a special verdict finding that Officers Muehler and Brill violated Mena's Fourth Amendment right to be free from unreasonable seizure by "detaining her for a longer period than reasonable." On July 11, 2001, the district court entered judgment against Defendants Muehler and Brill.

On July 25, 2001, Defendants filed a motion to alter or amend the judgment based on qualified immunity. The district court denied their motion. The officers appealed the district court's denial, claiming the court erred in denying them qualified immunity. This court, in *Mena v. City of Simi Valley,* 332 F.3d 1255 (9th Cir.2003) *rev'd sub nom. Muehler v. Mena,* 544 U.S. 93, 125 S.Ct. 1465, 1471, 161 L.Ed.2d 299 (2005), affirmed the district court, finding that the officers violated Mena's Fourth Amendment rights, and that the right to be free of such seizures was clearly established. *Id.* We held, *inter*

*alia,* that it was objectively unreasonable to keep Mena in the garage in handcuffs during the search. *Id.* at 1263–64. We declined to decide Mena's alternative argument, that she had been detained even after the search terminated, and that this supported the jury's finding that she was held for an unreasonable period of time.

The Supreme Court granted certiorari on June 14, 2004. *Muehler v. Mena,* 542 U.S. 903, 124 S.Ct. 2842, 159 L.Ed.2d 266 (2004). In its opinion, *Muehler v. Mena,* 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), the Supreme Court concluded that "the officers' detention of Mena in handcuffs *during the search* was reasonable." *Id.* at 1471 (emphasis added). The court vacated our judgment and remanded for consideration of Mena's "alternative argument for affirming the judgment below," namely that Mena was detained after the search was completed and that such detention supported the jury's verdict. *Id.* at 1472; *see also id.* at 1474 (Stevens, J., concurring).

We are now called upon to determine whether the judgment can be affirmed based on "Mena's contention that she was held longer than the search actually lasted." *Id.* at 1474 (Stevens, J., concurring).[1] We requested supplemental briefing on this question. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

"A jury's verdict must be upheld if it is supported by substantial evidence, … evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay,* 307 F.3d 915, 918 (9th Cir.2002). The evidence

---

1. As Justice Stevens noted in his concurrence, Defendants did not challenge our holding on qualified immunity and therefore waived that argument. *Id.* at 1473 n. 1 (Stevens, J., concurring in the judgment). Accordingly, we also decline to revisit that question and re-view only the sufficiency of the evidence supporting the jury verdict. Even so, the evidence supporting this decision would equally support a finding that the officers were not covered by qualified immunity.

must be considered in the light most favorable to the verdict.

Defendants invite us to consider whether, under *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), a "search" includes all tasks incident to the search, in this case, videotaping, inventory and cleaning. It is unnecessary for us to reach this question, however, because there is substantial evidence that Mena was held *after* all the "tasks incident to the search" were completed. Officer Brill admitted that Mena was held up to fifteen minutes *after* videotaping at Mena's residence was complete. Mena testified that she was held up to three hours, so the jury could have found that she was held up to an hour after videotaping was completed. The record shows that videotaping was one of the last tasks completed, if not the last task; in fact, the person who videotaped the premises was the last to leave the house. It is also undebatable that Mena was held after the inventory was completed; the inventory sheets indicate that the inventory was completed at 8:45 a.m., and Mena was not released until sometime after the videotaping had concluded at 8:57 a.m. Thus, there is substantial evidence that Mena was held even after these tasks "incident to the search" were completed.

The Defendants argue that, during this period after videotaping, the officers were occupied in removing rubber gloves and evidence stickers, and in doing a final walk-through. The evidence before the jury, however, was that the rubber gloves were left strewn around the house, and, indeed, Officer Brill testified that he did not know whether rubber gloves were re-moved from the house. Similarly, Officer Brill testified only that he "may" have done a walk-through of the house. Thus, the jury was entitled to find, based on the evidence, that these tasks were never completed.

The jury concluded that Mena's detention was unreasonable. Because substantial evidence supports the jury's finding under any definition of the word search, we need not define the term further. *Cf. Fairley v. Luman,* 281 F.3d 913, 917 (9th Cir.2002).[2] Accordingly, the district court's order that entered judgment against the defendants is AFFIRMED.

---

2. In so doing, we do not endorse Defendants' definition of "search" in any way. On the contrary, we doubt *Summers* would apply where, as here, the person held is not a suspect and where all contraband and weapons have been extracted from the premises. Such facts eliminate the justifications for detention that underlie *Summers*—officer safety, flight of suspects or destruction of evidence. *Summers,* 452 U.S. at 702–03, 101 S.Ct. at 2594. Instead, we simply decline to reach the question because it is not necessary to determine the matter before us.